IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 25-cv-0798-WJM-KAS

PIERCE SPINELLI,

      Plaintiff,

v.

SCOTT BYARS, Detective, in his individual capacity,
CITY OF BOULDER, COLORADO, and
MICHELLE SUDANO, Deputy District Attorney, in her individual capacity,

      Defendants.

## ORDER GRANTING MOTION FOR LEAVE
## TO FILE SECOND AMENDED COMPLAINT

Before the Court is Plaintiff Pierce Spinelli's Motion for Leave to File Second Amended Complaint ("Motion"). (ECF No. 54.) Defendant Michelle Sudano filed a response, to which Spinelli filed a reply. (ECF Nos. 57, 60.) For the following reasons, the Motion is granted.

### I.    PERTINENT BACKGROUND

The Court assumes the parties' familiarity with the background of this case from the Court's Amended Order granting Sudano's motion to dismiss Spinelli's amended complaint. (ECF No. 53.) The Court incorporates that background here and adds the following pertinent facts.

In October 2025, the Court granted Sudano's motion to dismiss Spinelli's fabrication of evidence and conspiracy to fabricate evidence claims. (*Id.*) As grounds, the Court concluded that his allegations—specifically, that Sudano "emboldened"

Anastasia Behrens to concoct new accusations against him—did not state a fabrication of evidence or conspiracy to fabricate evidence claim under Fed. R. Civ. P. 12(b)(6). (*Id.* at 12, 18.)  In reaching this conclusion, the Court primarily relied on the *Warnick v. Cooley* decision, wherein the Tenth Circuit discerned no fabrication of evidence claim where a prosecutor allegedly "encouraged" a witness to lie.  895 F.3d 746, 752–53 (10th Cir. 2018).  The Court likened this case to *Warnick* in the following ways:

- Similar to *Warnick*, Sudano allegedly "emboldening" Behrens to lie was not meaningfully different from the *Warnick* prosecutor "encouraging" a witness to lie.  (*Id.* at 15.)

- Further like *Warnick*, Spinelli did not specify "what Sudano's fabricated statements actually are."  (*Id.*)  By "emboldening," the Court explained, Spinelli could have meant that Sudano "merely comfort[ed] [Behrens], educat[ed] her about the legal standards at issue, talk[ed] through the night of the alleged incident to try to jog her memory, fe[d] her the precise facts to allege in the new interview with Byars, or something else.  Spinelli does not say." (*Id.* at 15–16.)

- And "just like in *Warnick*, it was *Behrens* who reached out to Sudano to initiate meeting and pursuing 'next steps.'"  (*Id.* at 16 (emphasis in original).)  "That means the prosecutors could not have fabricated those general allegations."  *See id.* at 753 ("[W]ithout any specific factual allegations, Warnick's complaint simply cannot cross the line from a merely possible claim of evidence fabrication to a plausible one.").

Finally, the Court concluded that Spinelli's allegations "do not shock the

2

conscience in a constitutional sense," which the parties implicitly agreed, at the dismissal stage, was necessary to state a claim against an executive branch officer like Sudano. (*Id.* at 17.) In the Court's view, "allegations that Sudano secretly met with Behrens after the preliminary hearing to discuss 'many things'; directed Behrens to contact Byars for 'additional questioning'; 'emboldened' Behrens to revise her allegations against Spinelli; and 'worked together' with Byars to further pursue the criminal prosecution are weak, vague, and threadbare." (*Id.* at 17.)

Nevertheless, the Court advised Spinelli that it would "give him an opportunity to move for leave to amend to try to remedy the defects in his pleading, should he believe that he has more specific allegations to allege." (*Id.* at 18.) "The Court caution[ed] Spinelli, however, that he should only file such a motion if he has a good faith basis to believe that he has specific factual allegations identifying in greater detail what Sudano did and how her actions deprived him of a constitutional right." (*Id.*)

In November 2025, Spinelli moved for leave to file a second amended complaint. (ECF No. 54.) Therein, he clarifies that, by "emboldened," he means that Sudano "fed Ms. Behrens 'the precise facts to allege in [her] new interview with [Detective] Byars.'" (*Id.* at 5.) According to Spinelli, these fed-facts were that Behrens "had continued saying no to Mr. Spinelli during the second part of their sexual encounter on September 1, 2022, which DDA Sudano, Ms. Behrens, and Detective Byars knew was false." (*Id.* at 6.) Spinelli adds that Sudano "was *the* connecting throughline [*sic*] for this particular false allegation against [him]," insofar as she "indicated to Detective Byars that he should lie" at the preliminary hearing and grand jury proceedings. (*Id.* at 6 (emphasis changed from bold to italics).) Spinelli claims that his theory is evidenced by the

3

"outline" Sudano prepared prior to the preliminary hearing, where she wrote down questions, "along with Detective Byars's expected responses." (*Id.* at 45.)

Contrary to his original complaints, moreover, Spinelli clarifies that it was Sudano and Byars—not Behrens—who "decided to initiate and pursue a meeting with Ms. Behrens immediately after the preliminary hearing." (*Id.* at 8.) He asserts that "[t]his is evidenced by Detective Byars' text message to Ms. Behrens on March 13, 2023, in which he told her, 'I'll set up a meeting with the DA and you soon ok?' along with the fact that he and DDA Sudano had already decided that same day to set up a meeting with Ms. Behrens." (*Id.*)

Finally, unlike his original complaints, which generally cited the Fourth and Fourteenth Amendments (ECF No. 22 at 78), Spinelli specifies that his fabrication of evidence and conspiracy claims are based on the Fourth Amendment and the Fourteenth Amendment's procedural—not substantive—due process clause. (*Id.* at 9.) This matters, says Spinelli, because the conscience-shocking standard does not apply to Fourth Amendment or procedural due process claims. (*Id.*)

## II.   ANALYSIS

Spinelli contends that he should be permitted to amend his complaint because his new factual averments distinguish his case from *Warnick* and because the conscience-shocking standard does not apply to his claims against Sudano. The Court agrees that amendment is appropriate here.

A party seeking leave to amend their pleading outside the time allowed for amendments as a matter of course may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give

4

leave when justice so requires." *Id.* Liberally allowing leave to amend ensures "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982) (citation omitted).

Still, leave to amend may be properly denied in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment," or where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A motion to amend a complaint or counterclaim is futile if, notwithstanding the amendment, the complaint 'would be subject to dismissal' for failure to state a claim." *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2 LP*, 2017 WL 4233017, at *3 (D.N.M. Sept. 21, 2017) (quoting *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)).

Applying these principles, the Court concludes that Spinelli's Motion should be granted for two principal reasons. First, Spinelli now clarifies that he alleges that Sudano fed Behrens the precise facts to advance during his criminal prosecution—specifically, that Behrens continued to say "no" during the second phase of the encounter—despite knowing that no evidence supported those facts. Second, Spinelli alleges that Sudano and Byars initiated their meeting with Behrens after the preliminary hearing—not the other way around. These revised allegations distinguish this case from *Warnick*, where the plaintiff did not specify what the prosecutor had allegedly instructed the witness to say, and where the witness had allegedly initiated the meeting with the prosecutor. 895 F.3d at 752–53 ("We are thus left to ponder what false

5

statements Warnick might be referring to. So too, are we left wondering what specific acts each individual prosecutor engaged in."). As a result, at least in these two ways, the Court's rationales for dismissing Spinelli's claims under *Warnick* no longer apply.

Arguing otherwise, Sudano insists that the Motion should be denied because "the amendment would not survive a motion for summary judgment or a motion to dismiss." (ECF No. 57 at 4.) This is so, Sudano posits, because the statement that Behrens had said "no" during the second phase of her encounter with Spinelli was supported by a September 11, 2022 report prepared by Officer Zachery DeBlasi, the responding officer in the underlying criminal case. (*Id.* at 5.) In that report, DeBlasi wrote, based on his interview with Behrens:

> Anastasia just said that after about two minutes, he rolled back to her and started kissing her again. Anastasia, she said that Pierce said, you can tell me to stop. *And Anastasia said Pierce forced himself on her when she continued to say no.* Pierce then proceeded to have sex with Anastasia. Anastasia said they finished having sex and Pierce told her, I shouldn't have tried to coerce you.

(ECF No. 58-2 at 1 (emphasis added).)

Based on this report, Sudano reasons that she could not have fabricated evidence because her theory of Spinelli's criminal prosecution—that Behrens said "no" to Spinelli during the second part of their encounter—was consistent with Behrens's statements to DeBlasi. Hence, Sudano argues that it would be futile to permit Spinelli to amend his complaint because his allegations are refuted by record evidence.

At the outset, the Court agrees with Sudano that DeBlasi's September 2022 report certainly tends to undercut the notion that she fabricated evidence six months later in March 2023. But whether DeBlasi's report accurately quotes Behrens as saying

"no" during the second part of the encounter is not as cut and dry as Sudano would have it. Indeed, what Behrens said and meant during her interview with DeBlasi was sharply contested at the preliminary hearing. The proposed second amended complaint alleges that, at the preliminary hearing, Byars conceded on cross-examination that Behrens did not report during her interviews with DeBlasi and Byars that she had said "no" during the second part of the encounter. (*Id.* at 63.) Instead, it was unclear whether the bodycam footage confirmed that Behrens had expressly rejected Spinelli's advances during the second part of the encounter. (*Id.*) The county court judge opined that he thought it was "pretty crucial" whether "body cam" footage confirmed that Behrens had said "no" during the second phase of the counter. (*Id.* at 67.) On this point, the judge ultimately concluded: "I haven't heard anything conclusively that that continued protestation was actually made, or even if it was felt that it was articulated to [Spinelli]." (*Id.*) For this reason, he found no probable cause to bind the case over to the state district court.[1] (*Id.* at 69.)

Thus, in light of the ambiguity surrounding whether and when Behrens said "no" to Spinelli during their encounter, the Court is not inclined at the amendment stage to definitively conclude, based on DeBlasi's report, that allowing amendment would be

---

[1] The Court has also reviewed the bodycam footage of Behrens's interview with DeBlasi. Perhaps most notably, the Court observes that, in response to DeBlasi's question, "Did [Spinelli's] penis enter you," Behrens said: "Yes, every time we had sex, his penis was inside me . . . . He did penetrate me after I had told him I didn't want to proceed." (Bodycam footage, 9:00–9:35.)

While this does bolster Sudano's argument that she did not fabricate Behrens's statement that she resisted Spinelli during the second phase of the encounter, this statement is still somewhat ambiguous. Specifically, it is unclear whether Behrens's statement to DeBlasi referred only to the first part of the incident, and not the second.

futile.

Nor is the Court convinced by Sudano's argument that the text messages Behrens sent Byars during the preliminary hearing necessarily mean that Sudano could not have fabricated evidence against Spinelli. In particular, Sudano relies on the following text message Behrens sent Byars while the preliminary hearing was ongoing: "I did specifically say I said no during the second part of the encounter: since I said '[H]e kept kissing me while I said no' [a]nd the kissing occurred AFTER he got back on top of me." (ECF No. 57 at 8.)

Again, the Court considers this to be very strong evidence refuting Spinelli's theory that Sudano fabricated Behrens's testimony to pursue his criminal prosecution. But the pertinent issue at this stage is whether Spinelli *plausibly alleges* that Sudano knowingly invented evidence against him. *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021). And as explained, there is at least a plausible inference (albeit perhaps a weak one) that Sudano did so before the preliminary hearing, *i.e.*, before Behrens had clarified what she meant in her interview with DeBlasi in her text messages to Byars.[2] *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025). Accordingly, the Court concludes that Spinelli's factual averments are minimally sufficient to satisfy the amendment standard.

That leaves whether the conscience-shocking standard applies to Spinelli's fabrication of evidence and conspiracy to fabricate evidence claims. Spinelli submits

---

[2] Were the Court to consider the text messages in resolving this case, the Court believes that the summary judgment stage would be the more appropriate stage do so, rather than the amendment stage.

that it does not, as he bases his claims only on the Fourth Amendment and Fourteenth Amendment's procedural due process clause, which do not require satisfaction of that standard. (ECF No. 54 at 9.) Sudano inexplicably does not grapple with Spinelli's legal argument that the conscience-shocking standard does not apply to such claims but maintains that this argument is untimely and offends the law of the case doctrine. (ECF No. 57 at 11.)

Initially, the Court echoes Sudano's concern that Spinelli conveniently waited to raise this legal issue until November 2025, despite knowing that Sudano would argue that the conscience-shocking standard applied as early as May 2025. (*See* ECF No. 18 (Sudano's first motion to dismiss, wherein she raised the conscience-shocking issue).) Spinelli explains that he did not argue that the conscience-shocking standard was inapplicable until now because he believed he satisfied that standard. (ECF No. 54 at 9.) But this explanation does not hold water. Spinelli is represented by able counsel, and able counsel would have timely argued, at least in the alternative, that the standard did not apply had they believed that was the case.

Despite this undue delay, however, the Court declines to deny the Motion because of this potential gamesmanship (at worst) or lack of diligence (at best). If Spinelli is correct that he need not show that Sudano's alleged conduct shocks the conscience—which, again, Sudano tellingly does not substantively dispute in her response to the Motion—the Court would be erring by forcing him to satisfy that standard. Applying the wrong legal standard would create problems down the road, including at the jury instruction stage. For this reason, the Court concludes that allowing amendment is the most prudent outcome here.

Sudano's reliance on the law of the case doctrine does not change the Court's mind. The law of the case doctrine permits a court, in its discretion, "to decline the invitation to reconsider issues already resolved earlier in the life of a litigation." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016). But the Court did not perform a legal analysis in its dismissal Order as to whether the conscience-shocking standard applies here in the first instance. (ECF No. 53 at 13, 17–19.) Rather, the Court applied that standard because Sudano argued, and Spinelli did not dispute, that it applied. Thus, the Court's implicit conclusion that the shocks-the-conscience standard applies here was not a formal legal determination that purported to definitively control this case moving forward.

And even had the Court performed such a legal analysis, the law of the case doctrine is "is not an inexorable command, but is to be applied with good sense," at least where a legal determination was made by a district court. *U.S. v. Monsisvais*, 946 F.2d 114, 117 (10th Cir. 1991). As explained, it would not make "good sense" to force Spinelli to satisfy a legal standard that potentially does not apply. *Id.* Accordingly, assuming the law of case doctrine has some relevance here, the Court elects to exercise its discretion to depart from its initial determination that the conscience-shocking standard applies at the dismissal stage.

In doing so, however, the Court emphasizes that it has not concluded that the conscience-shocking standard does or does not apply in this action moving forward. The Court believes it would be more appropriate to directly resolve this issue in another dispositive motion,[3] after *both* parties have substantively briefed the issue.

---

[3] To the extent Sudano is weighing whether to file another motion to dismiss or a

10

### III. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Motion is GRANTED. (ECF No. 54.)

2. Spinelli is DIRECTED to file his second amended complaint, attached to the Motion, as a separate docket entry by no later than **tomorrow, January 8, 2026**.

Dated this 7th day of January, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

---

summary judgment motion, the Court advises that it believes it would be a far better use of the Court's (and the parties') time and resources to brief and rule on only the latter, as discovery is already well-underway.